CASE 98.—ACTION BY L. M. NEYAUS AGAINST DICKINSON
        BROS.—June 17, 1910.

## Neyaus v. Dickinson Bros.

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Reversed.

1.    Evidence—Parol Evidence—Fraud.—A written contract may
      be shown by parol evidence to be fraudulent.
2.    Evidence—Parol Evidence—Contracts—Sufficiency.—A writ-
      ten contract may not be invalidated by parol evidence of
      fraud, unless the fraud is clearly established.
3.    Evidence—Sufficiency—Admission.—Where the purchasers
      of goods under a written contract claimed that they had not
      purchased the goods, but that they were to receive them
      merely as distributing agents, their written admissions in
      correspondence with the sellers that they had purchased
      the goods should outweigh their testimony.

DUFF & HUTCHERSON for appellant.

BAIRD, RICHARDSON & SUMMERS for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

This suit is upon a written contract signed by the
appellees, merchants, ordering from appellant's as-
signor a car load of stock and poultry food, and
agreeing to pay for it $1,944.04, as evidenced by their
note appended to the order. The defense was a
special plea of non est factum. It is conceded that
appellees signed the paper, but it is alleged that
when it was signed, the printed note had not been

filled out as to its amount, nor had the total amount of the cost of the goods been inserted in the blank in which it is now found. It was also charged that the writing was procured of the appellees by the fraud of the agent representing the seller, who, instead of selling the goods to appellees, employed them as distributing agents only, they to receive the goods and send them out to the retail merchants in the country from whom the agent had already procured orders for small lots, and from whom other similar orders were expected. The goods were shipped to appellees, who received them, and who delivered some part of them on orders from the retail merchants, and collected the retail purchase price. Before the note matured, it was assigned to the appellant, who brought this suit upon it. It is not pretended that the goods were not worth the sum charged, or that they fell below the quality represented. The issue is the capacity in which appellees acted in receiving them. The circuit court adjudged—the case being tried in equity—that the writing was obtained by fraud. Appellees were required to pay for only so much as they had resold and collected the pay for, less their commission.

The testimony is sharply conflicting as to what occurred at the time of the first transaction. Appellees sustain their pleading. One of the agents—the one who wrote the contract and who was the one in authority—testified to the contrary, and sustains the writing. Another agent, the one who initiated the negotiations with appellees, sustains their version so far as he goes, but he admits that he was not paying much attention to what was said after the other agent took charge of the negotiations, and does not pretend to have heard all that then transpired. Nor,

indeed, does he detail anything that transpired after
the other agent took up the negotiations. If the
parol testimony alone were looked to, we would not
feel justified in disturbing the judgment. However,
a number of letters were written by appellees to the
seller, beginning shortly after the contract was
signed and running through nearly a year. In these
letters appellees admit the execution of the note, and
that they had bought the food outright. Indeed, it
is not questioned in the correspondence. Other com-
plaints were then made, but which have no place in
this suit. The goods were slightly damaged in ship-
ping. Appellees filed their own claim against the
railroad company for the damage and collected it.
They solicited the sellers to give them an experienced
salesman to go into the country and take orders for
the food. In other words, not only the writing itself,
but every written memorial in the record, shows that
appellees had bought the goods as the writing sued
on shows. If written contracts could be set aside so
easily afterwards by mere preponderance of testi-
mony, when contradicted by deliberately drawn
statements signed by the party executing the original
writing, then there is little security in written con-
tracts, and their value in law is reduced to the level
of the subsequent election by the party sought to be
bound whether he will be bound. The law favors
written contracts. They afford less opportunity for
misunderstanding, and are less tempting to subse-
quent attempted evasions. They are more certain of
establishment, are more conducive of just adminis-
tration of business and of the law. They may, of
course, be used to perpetrate frauds. Then the law
lets them be overturned by parol evidence. But it
must be clearly established that they do not repre-

sent the agreement of the parties before they should be so overturned.

This record convinces us that the parties themselves once understood the situation alike.    There was then no dispute as to the fact that the writing had been executed, and truly set forth the agreement of the parties.    The admissions of appellees against their present interest, as then made, ought to outweigh in its legal effect as evidence their present statements now made in their own behalf.

Whether appellant was a bona fide purchaser of the note is not material.    It was assigned to him by the obligee.    His title is good if the obligee's was. The issue of discount in due course, and all the evidence on that point, becomes immaterial when it is determined that the obligee itself might have successfully maintained this suit upon the note.

Judgment reversed, and remanded for a judgment in conformity herewith.